_____

No. 95-2132
_____

United States of America,       *
                                *
          Appellee,             *  Appeal from the United States
                                *  District Court for the
     v.                         *  District of Minnesota.
                                *
Allen McKinney,                 *
                                *
          Appellant.            *

_____

          Submitted: November 14, 1995

             Filed: March 25, 1996
_____

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Allen McKinney challenges his conviction under 21 U.S.C. § 813 (the analogue statute) for trafficking in drugs, arguing that the statutory definition of an analogue drug is unconstitutionally vague. He also appeals from his conviction for using and carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c). We affirm the judgment of the district court.[1]


I.

     The proof tended to show that Mr. McKinney sold aminorex and phenethylamine. With respect to the period before aminorex became a listed controlled substance, the government maintained that the sale of aminorex was punishable as an analogue to the controlled

_____

[1]The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

substance 4-methylaminorex. Although phenethylamine is not a listed controlled substance, the government's position at trial was that phenethylamine was an analogue of the controlled substance methamphetamine and thus prohibited under the analogue statute. A witness testified that Mr. McKinney sold pounds of aminorex at a time for prices up to $13,500 per pound. There was also testimony that agents searched Mr. McKinney's property and discovered a 109-pound barrel of phenethylamine, that Mr. McKinney began trafficking in phenethylamine when he could no longer obtain aminorex, and that his customers used the aminorex and the phenethylamine as substitutes for methamphetamine. Expert witnesses and users of these and related drugs testified that aminorex and phenethylamine were comparable to certain controlled substances in both their chemical structure and effect. Government chemists offered descriptions and comparisons of the chemical structures of the substances.

There was evidence that Mr. McKinney sold these drugs out of a two-story brick schoolhouse that he had fortified by covering many of its windows with bricks or sheet metal. Access to the building, according to government testimony, was through an electronically operated door, and Mr. McKinney had installed numerous video surveillance cameras in and around the building which fed six monitors in a central "control room" on the second floor. Law enforcement officers testified that they found four firearms (three of which were not loaded) in the control room with extra ammunition nearby. While other guns and ammunition were apparently discovered elsewhere on Mr. McKinney's property, he was charged with "using" only the four firearms that were in the control room.

Mr. McKinney was convicted of trafficking in aminorex and phenethylamine, using or carrying a firearm during and in relation to a drug-trafficking crime, and money laundering. After trial but before sentencing, Mr. McKinney retained a new attorney and filed

a motion to dismiss the counts in the indictment regarding analogue drugs, arguing that the statute defining analogue substances is unconstitutionally vague as applied to aminorex and phenethylamine. Mr. McKinney also filed a motion for new trial based on newly-discovered evidence, namely a report from a pharmacologist (whom Mr. McKinney had retained post-trial) stating that phenethylamine is not an analogue of any controlled substance, but that aminorex was such an analogue. (The pharmacologist later opined that aminorex was not an analogue either.) The district court held an evidentiary hearing and concluded that the analogue statute was not unconstitutionally vague as applied to the facts in this case. The district court denied the motion for a new trial because Mr. McKinney failed to show that the new evidence presented was in fact new, that it could not have been produced at trial, and that it would likely have led to an acquittal. Mr. McKinney also argued for a new trial on the ground that his trial lawyer had been ineffective, which argument the court found untimely.

II.

Because Mr. McKinney did not raise his constitutional objection to the statute under which he was prosecuted until after the jury convicted him, we are more than a little dubious about the propriety of the procedural posture in which this case presents itself. But since the government has made no argument that the issue was waived, we address the merits of Mr. McKinney's constitutional claim.

Because manufacturers of illegal drugs have become adept at tinkering with the molecular structure of controlled substances while retaining the effects that those substances produce, the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances. Under that statute, a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance, and either has a substantially

similar effect on the user's central nervous system, or a relevant someone represents that it has or intends it to have such an effect.  See 21 U.S.C. § 802(32)(A).  In our case, the government charged that aminorex was an analogue of the controlled substance 4-methylaminorex.  (We assume that that name is a shorthand for the controlled substance cis-4-methylaminorex. See 21 C.F.R. § 1308.11(f)(5) (1995).)  In September, 1992, the Drug Enforcement Administration temporarily designated aminorex as a controlled substance, 57 Fed. Reg. 43,399 (1992), a designation that has since become permanent.  See 21 C.F.R. § 1308.11(f)(1) (1995).  As noted above, the government also charged that phenethylamine was an analogue of methamphetamine.

Mr. McKinney argues that the statute is unconstitutionally vague because there is a lack of scientific consensus that aminorex and phenethylamine are analogues.  The focus of Mr. McKinney's attack on the statute is the term "substantial similarity."  He urges that if experts disagree as to whether the chemical structure of one drug is substantially similar to a controlled substance, then the statute is unconstitutionally vague as to that drug.  We concede that the statute is somewhat elastic, because it is intended to capture within its scope drugs that are not specifically listed and even some that perhaps have not been discovered yet.  But we find that application of the statute to aminorex and phenethylamine is not unconstitutionally vague, because, "[w]hile doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave [defendant] adequate warning that [his conduct] was a criminal offense."  United States v. Powell, 423 U.S. 87, 93 (1975).  "[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree."  Nash v. United States, 229 U.S. 373, 377 (1913). In our case, a reasonable layperson could, for example, have examined a chemical chart and intelligently decided for himself or herself, by comparing their

-4-

chemical diagrams, whether the chemical structure of two substances were substantially similar. At trial, two experts testified that aminorex and phenethylamine were analogues under the statute, and one expert apparently drew diagrams of phenethylamine and methamphetamine for the jury's comparison. We have examined the charts that appellant has submitted and believe that they would have put a reasonable person on notice that the substances in question were substantially similar within the meaning of the statute.

### III.

Mr. McKinney also contends that he was entitled to a new trial based on newly-discovered evidence, namely, his expert's opinion. To obtain a new trial based on newly-discovered evidence one must show, inter alia, facts from which the court may infer diligence on the part of the movant. See, e.g., United States v. Provost, 921 F.2d 163, 164 (8th Cir. 1990) (per curiam), cert. denied, 499 U.S. 968 (1991). We do not think that the district court clearly erred in finding that the expert opinion could have been produced at trial had Mr. McKinney acted with due diligence.

Mr. McKinney sought a new trial on the additional ground that his trial counsel was ineffective. This motion, however, was properly denied as untimely, because a motion for a new trial not based on newly discovered evidence must be brought within seven days after the verdict, Fed. R. Crim. P. 33, and Mr. McKinney did not move for a new trial until months later. Furthermore, Mr. McKinney's claims of ineffective assistance of counsel are undeveloped in this record and therefore would be more properly raised in a collateral proceeding under 28 U.S.C. § 2255. See United States v. Jennings, 12 F.3d 836, 840 (8th Cir. 1994).

### IV.

Mr. McKinney was also convicted for using or carrying a firearm during and in relation to a drug-trafficking crime in

violation of 18 U.S.C. § 924(c). Since Mr. McKinney's appeal was submitted, the Supreme Court has established a narrower meaning for the word "use" in 18 U.S.C. § 924(c)(1) than the one that we had previously adopted in many of our cases. Compare Bailey v. United States, 116 S. Ct. 501 (1995), with United States v. Matra, 841 F.2d 837, 841-43 (8th Cir. 1988). But Mr. McKinney's motion for acquittal did not challenge the correctness of our previous cases, he did not object to the instruction that embodied the principles announced in those cases, and he did not argue in his initial appeal brief that his conviction for using firearms was in any way infirm. We therefore conclude that Mr. McKinney's argument based on Bailey has been waived.

V.

For the foregoing reasons, we affirm the judgment of the district court.

HEANEY, Circuit Judge, concurring and dissenting.

I concur in Sections I through III of the majority's opinion. I dissent with respect to Section IV. At the time of McKinney's conviction, sentence, and the filing of his appeal, the Supreme Court had not yet decided Bailey v. United States, 116 S.Ct. 501 (1995); thus, it would have been useless for McKinney to challenge the correctness of our previous cases, object to the jury's instructions, and to argue that his conviction was in any way infirm. As soon as Bailey was decided and before this court acted on his direct appeal, he argued that this court should apply Bailey. I agree that we should. The majority concludes that McKinney's argument based on Bailey was waived. It has always been my understanding that a waiver must be knowing and intentional. I am at a loss to understand how a waiver can be found here.

In my view, the proper course for this court to take would be to remand to the district court and permit it to determine whether

in light of <u>Bailey</u>, McKinney's conviction and sentence can be sustained.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.