# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

———————

Nos. 02-3814/3985

———————

United States of America,       *
      *
      Plaintiff - Appellee,       *
      *     Appeal from the United States
      v.       *     District Court for the
      *     District of South Dakota.
Michael Len Orchard,       *
      *
      Defendant - Appellant.       *

———————

Submitted: May 13, 2003
Filed: June 18, 2003

———————

Before LOKEN, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Michael Len Orchard entered conditional pleas of guilty to knowingly and intentionally distributing a controlled substance analogue intended for human consumption to a person under the age of 21, in violation of 21 U.S.C. §§ 841(a)(1), 859, 813, and 802(32), and to knowingly and intentionally possessing a controlled substance analogue intended for human consumption, in violation of 21 U.S.C. §§ 844, 813, and 802(32). The district court[1] sentenced him to 41 months, and

———————

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

Orchard appeals. He claims that the analogue statute is unconstitutionally vague and raises several issues related to his sentencing. We affirm.

Michael Orchard and his wife Darcy employed Lora Winseman as babysitter for their three children at their home in Sioux Falls, South Dakota. Lora was nineteen in July 2001, and she had known the Orchard family for almost eight years. She considered them to be a second family. Around noon on July 31, Michael Orchard came home while Lora was preparing lunch for the children; his wife was not there. Lora told Orchard that she was tired, and he offered her some of his headache medicine which would "pick her up." Lora had previously seen Orchard receive two small bottles of the liquid in the mail. He had told her that it was migraine medicine which he ordered from Canada because it was illegal in the United States. Tests later identified the substance as 1,4-Butanediol (1,4-BD).

Orchard mixed some of the 1,4-BD with a soft drink and gave it to Lora, who drank it. He told her that she should not drink too much because the substance was used for date rape. Within fifteen minutes, Lora began to feel intoxicated, experiencing nausea, dizziness, blurred vision, and a loss of coordination. Orchard made her another 1,4-BD mixture, but she poured it down the drain when he left the room briefly. They sat down on the couch, and Lora told Orchard that she was feeling dizzy. He told her to relax and offered to rub her back. This seemed strange to her because he had never made such an offer before. Orchard pulled her against him and started rubbing her shoulders. He massaged the front of her chest near her breasts and rubbed her neck, ear lobes, and head. She began to feel extremely dizzy and uncomfortable. Twice when Lora tried to get away from Orchard by standing up, he sat her back down on the couch. He brought her legs up onto the couch and began to rub them, reaching up under her shorts. The drug made Lora feel that she could not prevent his advances so she rolled over and pretended to sleep. Orchard continued to touch her.

Darcy Orchard arrived home unexpectedly, and her husband jumped off the couch and took her directly upstairs. Soon they both left the house together. Lora called a friend and told her what had happened, and the friend came over to the Orchard house. Lora became very nauseous and vomited.

After the Orchards returned home and Michael went to work, Lora told Darcy Orchard what her husband had done and how the liquid had made her feel. Darcy is a nurse, and she recalled that over the past year she had experienced similar symptoms for which her doctor had been unable to diagnose a cause. She told Lora to go to the hospital emergency room and be tested for chemicals. Lora tested positive for 207.2 ug/ml of GHB, a controlled substance into which 1,4-BD metabolizes in the human body.

Meanwhile, Darcy collected a sample of her husband's liquid substance and took it to the police department and filed a report. While she was out, Michael Orchard returned home, took the bottle of 1,4-BD, and drove to Iowa where he disposed of it. The police accompanied Darcy home where they discovered that Michael had barricaded the only door to which she had a key and that the remaining doors had been secured with dead bolt locks. They called a locksmith, gained entry to the house, and discovered that Orchard and the bottle of 1,4-BD were gone. Darcy Orchard later found information in the house regarding prices and methods of delivery for 1,4-BD and a recipe for making GHB at home.

Orchard was indicted for knowingly and intentionally distributing a controlled substance analogue intended for human consumption to a person under the age of 21, in violation of 21 U.S.C. §§ 841(a)(1), 859, 813, and 802(32), and for knowingly and intentionally possessing a controlled substance analogue intended for human consumption, in violation of 21 U.S.C. §§ 844, 813, and 802(32). He moved to dismiss both counts, contending that the analogue statute, § 802(32), is void for vagueness under the Fifth Amendment. A hearing was held before a magistrate judge

who recommended that the motion be denied. The district court adopted the magistrate's recommendation, and Orchard entered conditional guilty pleas, reserving his right to challenge the constitutionality of the analogue statute. A Presentence Investigation Report (PSR) was prepared, and Orchard objected to certain information in it which was based on comments of Darcy Orchard unrelated to the case.

Orchard came before the district court for sentencing on November 4, 2002. The court arrived at an adjusted offense level of 13 after granting him a two level decrease for acceptance of responsibility under § 3E1.1, but adding two levels for obstruction of justice under § 3C1.1. United States Sentencing Commission, Guidelines Manual, §§ 3C1.1, 3E1.1 (Nov. 2002) [USSG]. Offense level 13 and his criminal history category I would yield a guideline range of 12 to 18 months, id. Ch.5, Pt.A, but the court departed upward by seven offense levels. It based two levels of the increase on § 5K2.3 for psychological injury to the victim and the additional five levels on two other sections in Part K of Chapter 5: § 5K2.9 because Orchard had administered the 1,4-BD to facilitate a sexual assault and § 5K2.0 because the case was outside the heartland of the typical drug distribution case due to the long relationship of trust existing between Orchard and his victim. This brought Orchard's adjusted offense level to 20 and a guideline range of 33 to 41 months. Id. Ch.5, Pt.A. The court sentenced Orchard to 41 months.

On appeal, Orchard contends that § 802(32) is unconstitutionally vague and that the court erred at sentencing in imposing an obstruction of justice enhancement and in departing upward.[2]

_____

[2]Orchard also appeals the district court's order denying his motion to revise the PSR. At sentencing Orchard renewed his objections to information in the PSR based on statements of Darcy Orchard, and the court responded that it was not considering any of the controverted statements. A few days later Orchard moved to strike these statements in the PSR; the motion was denied on November 22.

Orchard first challenges the constitutionality of 21 U.S.C. § 802(32), the statute that defines "controlled substance analogues," which under federal law are treated like controlled substances if intended for human consumption. 21 U.S.C. § 813. Section 802(32) defines a controlled substance analogue as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the . . . effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the . . . effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A)(i)–(iii) (2000). Orchard argues that this definition is void for vagueness under the Fifth Amendment. We review this challenge de novo. United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002).

---

Rule 32 of the Federal Rules of Criminal Procedure directs that the court rule on a disputed matter in the PSR or "determine that a ruling is unnecessary either because the matter will not affect sentencing or because the court will not consider that matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). The district court followed the rule and was not required to "strike controverted material not considered in sentencing." United States v. Smith, 40 F.3d 933, 936 (8th Cir. 1994). Rule 32(i)(3)(C) also requires that the court's determination be appended to the PSR sent to the Bureau of Prisons, and a written record of its determination in this case was provided in compliance with the rule. The order denying the motion to strike is affirmed.

A penal statute is unconstitutionally vague if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). A vagueness challenge to statute which does "not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975). We considered a vagueness challenge to § 802(32) in Washam and held there that the statute is not void for vagueness when applied to 1,4-BD as an analogue of GHB. Washam, 312 F.3d at 933. Orchard attempts to distinguish his case from Washam with the argument that, unlike the Washam defendant, he has provided evidence that the food additive MSG falls within the scope of § 802(32). Since MSG is not considered illegal, he concludes that the statute encourages arbitrary enforcement. He argues that he has shown that MSG, like 1,4-BD, has effects on the human body substantially similar to GHB. Although his expert witness testified that MSG converts to GHB in the body and that it has a "hangover" effect on some people, there was no showing that similar quantities of MSG and GHB would have similar effects or that the effect of MSG is similar in intensity to that of GHB. Orchard has not shown MSG to have an effect on the central nervous system substantially similar to that of a controlled substance. § 802(32)(A)(ii). We conclude that Washam is controlling and that § 802(32) is not void for vagueness as applied to Orchard. See United States v. Perkins, 94 F.3d 429, 437 (8th Cir. 1996) ("[O]ne panel of the court cannot reverse another panel.").

The first sentencing issue raised by Orchard is the district court's application of a two level enhancement for obstruction of justice under § 3C1.1 of the guidelines. This enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the

-6-

investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1.[3] The court imposed this enhancement based on the facts that Orchard barricaded his house while his wife was out and disposed of the remaining 1,4-BD. Because of the disposal it was not possible to determine how much 1,4-BD he had possessed and it would also have prevented any test of the substance if his wife had not taken a sample while he was gone. We review the imposition of the enhancement for clear error. United States v. Young, 315 F.3d 911, 913 (8th Cir. 2003).

Orchard argues that the enhancement cannot be applied to him because there was no showing that he knew that he was being investigated or that an investigation was probably underway. See United States v. Vaca, 289 F.3d 1046, 1049 (8th Cir. 2002). Undisputed facts in the PSR show, however, that Orchard knew he had given an illegal substance used for date rapes to a nineteen year old babysitter and then touched her in an inappropriately sexual manner; that he knew that the babysitter had had an opportunity to talk with his wife or others after he went to work; that he drove to Iowa where he disposed of the 1,4-BD container; and that he barricaded the only door to the house for which his wife had a key. The district court did not clearly err in finding from this record that Orchard knew an official investigation was probably underway. Although the probation officer did not apply an obstruction enhancement in the PSR calculations, the sentencing court "must use its independent judgment to resolve the issues before it." United States v. Innie, 7 F.3d 840, 848 (9th Cir. 1993). We conclude that imposition of the obstruction of justice enhancement was not

_____

[3]While § 3C1.1 uses the word "during," it also applies to obstructive conduct that occurs before an official investigation has commenced. See USSG § 3C1.1 comment. (n.4(d)); United States v. Lallemand, 989 F.2d 936, 938 (7th Cir. 1993); United States v. Barry, 938 F.2d 1327, 1334–35 (D.C. Cir. 1991). But see United States v. Clayton, 172 F.3d 347, 355 (5th Cir. 1999). Orchard has not raised any issue related to this part of the guideline. The guideline also requires that "the obstructive conduct relate[] to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." USSG § 3C1.1. This portion is not in question here.

clearly erroneous in this case.

Orchard argues that the district court erred in departing upward for several reasons. He contends that Lora Winseman's psychological injuries were insufficiently extreme for departure under USSG § 5K2.3; that a departure under § 5K2.9 was unsupported by the facts and inappropriate because facilitation of a sex crime had already been taken into account by the base offense level; and that the court would have had to use a § 3B1.3 enhancement for abuse of a position of trust before considering a § 5K2.0 departure. When a departure from the guidelines is challenged on appeal, we review the sentencing court's factual findings for clear error, and we review de novo whether the district court based its departure on a permissible factor and whether the court provided the required written statement of reasons for the departure.[4] See 18 U.S.C. § 3742(e); United States v. Thornberg, 326 F.3d 1023, 1026 n.4 (8th Cir. 2003).

A factor is a permissible basis for departure if it "advances the objectives set forth in [18 U.S.C. §] 3553(a)(2)," "is authorized under [18 U.S.C. §] 3553(b)," and "is justified by the facts of the case." 18 U.S.C. § 3742(j)(1). In this case, all of the factors identified by the district court in support of the departures—the seriousness of the psychological harm to the victim, the abuse of a trusting relationship, and the facilitation of a further criminal act—advance the statutory objectives that a sentence "reflect the seriousness of the offense . . . and provide just punishment." § 3553(a)(2)(A). These factors are authorized bases for departure under § 3553(b), for they are encouraged grounds for departure under Chapter 5, Part K of the guidelines. This part specifically addresses factors not adequately considered in formulating the guidelines. See 18 U.S.C. § 3553(b); USSG § 5K2.0, p.s. The only

_____

[4]This is the standard of review for departures established by the PROTECT Act, Pub. L. No. 108-21, § 401(d), 117 Stat. 650 (2003) (amending 18 U.S.C. § 3742(e)). We would also affirm in this case under the more deferential standard applicable before the Act.

question then is whether these factors are justified by the facts of this case.

Orchard argues that the facts do not support an upward departure under § 5K2.3 because Lora Winseman has not "suffered psychological injury much more serious than that normally resulting from commission of the offense." USSG § 5K2.3, p.s. He points out in particular that since the attack Lora has maintained three jobs and that she has not sought psychological counseling. The guidelines explain that application of this section is appropriate only "when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of extended and continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns." Id.

Lora wrote in her victim impact statement that since the attack she has suffered from "extreme paranoia, trust issues, reoccurring nightmares, [and] panic attacks" so severe that her breathing became troublesome. (PSR Victim Impact Statement at 2.) Her statement made clear that her "personal life [had] suffered immensely" and she had been unable to have "a relationship with [a man] for over a year now." (Id. at 3.) She testified at the sentencing hearing that she cannot tolerate having "people near my ear" because "there was a moment . . . in the kitchen where [Orchard] held me and breathed in my ear." (Sentencing Tr. at 8.) Lora also testified that she would have sought counseling had she been able to afford it. Her mother testified to severe changes in her behavior and attitude since the attack, stating that "before this incident my daughter had one mood, that was happy, and always optimistic, and since then she has become moody, I see her depressed often." (Id. at 11.) Her mother described how Lora used to have a "wonderful relationship" with her family but that "she picks fights with us now." (Id.) These unrebutted statements establish that Lora has suffered extraordinary psychological injury within the meaning of § 5K2.3. Furthermore, we are not persuaded by Orchard's argument that her work schedule shows the absence of emotional trauma; it could be understood to show exactly the

opposite.  Based on this record, we conclude that an upward departure under § 5K2.3 was justified.

Orchard raises two arguments why the facts do not justify a § 5K2.9 departure. That section applies when "the defendant committed the offense in order to facilitate . . . the commission of another offense."  USSG § 5K2.9.  He first contends that such a departure is inappropriate for convictions for distributing date rape drugs such as GHB or its analogue 1,4-BD because they are designed to facilitate rape.  In this type of case facilitation will have already been accounted for by the applicable guidelines and statutes he argues.  This argument overlooks the fact that the guideline governing sentences for distribution of a date rape drug to a person under the age of 21 also applies to the distribution of any controlled substance to such an individual.  See id. § 2D1.2.  This raises the question whether Orchard's intent to facilitate a sexual assault takes his case outside the heartland of all underage drug distribution cases, not just underage date rape drug distribution cases.  See Koon v. United States, 518 U.S. 81, 104–05 (1996) (court erred by focusing on whether case was an unusual instance of excessive police force because the underlying guideline included all forms of aggravated assault committed under the color of law).  We do not believe, and Orchard has not argued, that the heartland of all underage drug distribution offenses involves the facilitation of further crimes.[5]

Orchard's second argument with respect to the § 5K2.9 departure is that the district court's finding that he intended to facilitate a sexual assault is not supported by the facts.  The undisputed facts show, however, that Orchard gave Lora a glass of what he described as a date rape drug and then attempted to give her a second. Orchard does not deny that as soon as she ingested the drug, he began physical

---

[5]The fact that 21 U.S.C. § 859 provided for a mandatory minimum sentence of one year in this case, narrowing the guideline range from 8–14 months to 12–14 months, does not change our analysis.  Like USSG § 2D1.2, § 859 applies to all controlled substance distributions, not just to date rape drug distribution.

contact with her, something he had never before attempted. He admits that the physical contact with her was sexual in nature. Intent is a question of fact, see United States v. Heathershaw, 81 F.3d 765, 769 (8th Cir. 1996), and based on this record, we cannot conclude that the district court clearly erred in finding that Orchard provided the 1,4-BD to Winseman in order facilitate a further crime. We therefore conclude that an upward departure under § 5K2.9 was justified by the facts of this case.

Orchard argues that the facts do not support a § 5K2.0 upward departure, which is permissible when a factor makes the case so unusual as "to fall outside the heartland of cases in the Guideline." USSG § 5K2.0, comment. (internal quotation marks omitted). Orchard contends that it was improper for the court to base the § 5K2.0 departure on abuse of the trusting relationship between Orchard and Lora, because § 3B1.3 of the guidelines already provides an enhancement for abuse of a position of trust. See USSG § 5K2.0, p.s. (court may not depart based upon a factor already accounted for by the guidelines unless "the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive"). Section 3B1.3 only applies, however, to an abuse of a public or private trust "characterized by professional or managerial discretion." Id. § 3B1.3, comment. (n.1). For this reason we cannot say that the abuse here has already been accounted for in the guidelines.[6] Further, the record supports the district court's determination that the nature of the abuse here makes this case different from the typical drug distribution case. Lora stated that she had been a friend of the Orchard family for almost eight years, that she considered it to be her second family, and that because of the "trust [she] thought [she] had [with Orchard], [she] didn't think twice about taking" the 1,4-BD when he offered it to her (PSR Victim Impact Statement at 1). Abuse of this level of trust takes the case outside the heartland of the

---

[6]The only case cited by Orchard in support of his argument that § 3B1.3 would apply here is not to the contrary since the defendant in that case abused his position as a spiritual advisor. See United States v. Johns, 15 F.3d 740, 744 (8th Cir. 1994).

drug distribution guideline because it has the potential to cause substantially greater psychological harm to the victim than the typical case. We conclude that the § 5K2.0 departure was justified in this case.

After thoroughly reviewing the record, we conclude that the district court did not err by holding that 21 U.S.C. § 802(32) was constitutional as applied to Orchard, by imposing an enhancement for obstruction of justice, or by departing upward pursuant to USSG §§ 5K2.0, 5K2.3, and 5K2.9.[7] The judgment of the district court is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[7]Although the file does not contain a written statement of reasons for departure as now required by 18 U.S.C. § 3553(c)(2), as amended by § 401(c) of the PROTECT Act, a remand is not required if the reviewing court determines that the departure was not impermissible. See 18 U.S.C. § 3742(f)(3). Here the district court's detailed explanation at Orchard's sentencing hearing was sufficient to make that determination.