# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1489

———————

United States of America,

       Appellee,

v.

Wade Bamberg,

       Appellant.

\*
\*
\*
\* Appeal from the United States
\* District Court for the District
\* of South Dakota.
\*
\*
\*

———————

Submitted: November 14, 2006
Filed:  February 27, 2007

———————

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

A jury convicted Wade Bamberg of: distribution of a controlled substance analogue to a person under 21; possession of a controlled substance analogue with intent to distribute; identity theft; aggravated identity theft; and access device fraud. The district court[1] sentenced him to 149 months imprisonment.  Bamberg argues that: the federal Analogue Act, 21 U.S.C. § 802(32)(A), is unconstitutionally vague; the

---

[1] The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

district court erred in admitting certain evidence; the jury instructions were erroneous; and the court posed prejudicial questions to a government witness. This court affirms.

## I.

In January 2005, police in Mitchell, South Dakota, found Lee Hohn unconscious in a stolen vehicle. Hohn told them he was under the influence of "liquid ecstacy" or "GHB" when he stole the car. Hohn said he obtained the substance from Jarvis Cassutt. Police located Cassutt, an 18-year-old, in the Community Alcohol and Drug Center. He surrendered a bottle containing the liquid, and a price list for various doses. Cassutt told police that Wade Bamberg, another CADC resident, gave him the liquid and the prices. When police arrested Bamberg later that day, he was carrying two 20-ounce soda bottles containing a liquid that tested positive for 1,4 Butanediol ("1,4 BD").

Shawn Moline reported to police in 2004 that he was receiving calls and correspondence about credit lines he had not opened and purchases he had not made (including a statement from Dell for $3,447 worth of computer equipment). Two credit applications ostensibly in Moline's name used rented mailbox #165 at a UPS Store in Mitchell, South Dakota. A person using a Kansas identification card with Bamberg's picture, but with Moline's name and social security number, rented the mailbox in 2004. Between June 2004 and January 2006 several Dell boxes came to mailbox #165, as well as several large metal containers with a long chemical name beginning with "B."

In Bamberg's room at the CADC, police found computer receipts in the name of Shawn Moline and paperwork for a storage unit rented to "Dan Cunningham." A key on Bamberg's person opened the storage unit. There, police found a Dell computer, several containers of 1,4 BD, and multiple identification cards with Bamberg's picture but the names "Shawn Moline" or "Daniel Cunningham." In

-2-

Bamberg's room police also found copies of postal money orders to Pfaltz & Bauer, a chemical company. Its records showed that "Shawn Moline" and "Moline Tech" ordered 80 liters of 1,4 BD in four shipments, delivered to mailbox #165.

Cassutt testified that he met Bamberg at the CADC. He said that Bamberg once gave him a dose, and later a small bottle of the drug, which Cassutt passed on to Hohn. Cassutt and Bamberg talked about selling it; Bamberg told him prices for different quantities. Cassutt got from Bamberg the bottle of 1,4 BD that he turned over to police (Cassutt could not remember if he stole it or if Bamberg gave it to him). Bamberg was convicted of distribution of a controlled substance analogue (1,4 BD) to a person under 21 (Cassutt), in violation of 21 U.S.C. §§ 802(32), 813, 841(a)(1), 859; possession of a controlled substance analogue with intent to distribute, in violation of 21 U.S.C. §§ 802(32), 813, 841(a)(1); identity theft, in violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(3); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and access device fraud, in violation of 18 U.S.C. § 1029(a)(2).

II.

Bamberg contends that the federal Analogue Act is unconstitutionally vague. This court reviews de novo a constitutional challenge to a federal statute. ***United States v. Orchard***, 332 F.3d 1133, 1137 (8th Cir. 2003).

Federal law, 21 U.S.C. § 802(32)(A), defines a controlled substance analogue as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

-3-

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

An overly vague statute "violates the first essential of due process of law," because citizens "must necessarily guess at its meaning and differ as to its application". *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Bamberg contends that the Analogue Act fails both prongs. He offers no authority, however, for the claim that "the statute did not provide him with adequate notice that possession of [1,4] BD was proscribed conduct." To the contrary, "there is sufficient notice that 1,4-Butanediol is a chemical analogue" of gamma-hydroxybutyric acid (GHB), an illegal drug. *United States v. Washam*, 312 F.3d 926, 931 (8th Cir. 2002). The lack-of-notice argument fails.

Bamberg's expert testified that a person who consumed enough monosodium glutamate (MSG) – a common food additive – would experience effects similar to those from GHB. Bamberg thus reasons that the statute is arbitrary and void.

This court has rejected Bamberg's argument twice in the last four years. *See id.* at 932 ("While MSG may be substantially similar in physical and chemical structure to GHB, just as is 1,4-Butanediol, MSG does not have similar effects on the human body, nor do food producers intend for MSG to have the same effect as GHB."); *see also Orchard*, 332 F.3d at 1138 ("Orchard has not shown MSG to have an effect on the central nervous system substantially similar to that of a controlled substance.").

Bamberg requests reconsideration of this issue, claiming the *Washam* and *Orchard* courts did not have the benefit of precise expert testimony that MSG and GHB had similar effects. The jury, however, was not required to accept the testimony of Bamberg's expert. The government offered two expert witnesses who contradicted Bamberg's. The jury apparently believed the government's witnesses (who testified that MSG produced symptoms that are "pretty mild and kind of nondescript . . . certainly nothing at all that even vaguely resembles" those from GHB). This court views the facts in the light most favorable to the jury's verdict. *See United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006). The controlled substance analogue statute does not lend itself to arbitrary enforcement, and is not void for vagueness.

### III.

The district court admitted more than 25 pay/owe sheets found on a disc seized from Bamberg, and e-mails from his computer's hard drive. Bamberg objected, arguing that it is irrelevant, prejudicial, and inadmissible "bad acts" evidence. Admission of evidence is reviewed for abuse of discretion, and is reversed only if "an improper evidentiary ruling affects the substantial rights of the defendant." *United States v. Kenyon*, 397 F.3d 1071, 1079 (8th Cir. 2005).

Only relevant evidence is admissible. *Fed. R. Evid. § 402*. In the e-mails, "Bambam" discusses the manufacture and sale of various drugs with "Kev", "Kevin," "TJ & Nadene," and "Honey." The pay/owe sheets document drug transactions. Bamberg was charged with distribution and possession of a controlled substance analogue with intent to distribute. Evidence that he previously manufactured and sold drugs is highly relevant.

Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice". *Fed. R. Evid. § 403*. In one e-mail, Bambam tells Kevin, "The extra $100 and G are for your hot ass!" Another e-mail is

addressed to Honey, which Bamberg characterizes as "an obvious homosexual reference if Honey is Kevin." These brief, ambiguous statements are the only examples of prejudice that Bamberg cites. The district court correctly weighed this evidence.

Nor are the documents inadmissible as "bad acts" evidence. Evidence of other wrongdoing is not admissible to prove that the accused committed the charged crime. ***Fed. R. Evid. § 404(b)***. It may be admissible for other purposes, including proof of intent, opportunity, knowledge, and absence of mistake or accident. ***Id.*** To be admissible under Rule 404(b), the evidence must be "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." ***United States v. Rush***, 240 F.3d 729, 731 (8th Cir. 2001).

The documents here include pay/owe sheets, and e-mails discussing the manufacture and sale of illegal drugs between October 2001 and December 2004. In one e-mail, Bam says, "The last thing I want to do is slip up right now while the FEDS are watching my every move and get thrown back into jail." Intent and knowledge are key to the case against Bamberg. The acts referred to in the evidence were proved by a preponderance of the evidence, and the evidence was not prejudicial. There was no abuse of discretion in this regard.

Bamberg's reliance on *United States v. Heidebur*, 122 F.3d 577 (8th Cir. 1997), is misplaced. In that case, testimony about the defendant's molestation of his stepdaughter was admitted to prove that he knowingly possessed sexually explicit photographs of her. This court ruled this testimony inadmissible under Rule 404(b), because it was only probative of the defendant's criminal propensity, not of any element of the crime charged (i.e., knowing possession of sexually explicit photographs of a minor, 18 U.S.C. § 2252(a)(4)(B)). But in this case, the pay/owe

-6-

sheets and the e-mails are probative of an element of the crime charged, and are therefore admissible.

Finally, Bamberg objects that the district court erred by failing to instruct the jury that "bad acts" evidence is admissible only for certain purposes. Because he did not request this instruction, the standard of review is only for plain error. *See United States v. Smith*, 450 F.3d 856, 859 (8th Cir. 2006). The error must affect the defendant's substantial rights, and have "so infected the entire trial that the resulting conviction violates due process." *Id.* That is not the case here. "In fact, we have never found it to be plain error when a court does not give a limiting instruction of any kind sua sponte with respect to Rule 404(b) type evidence." *United States v. Perkins*, 94 F.3d 429, 436 (8th Cir. 1996); *see also United States v. McGuire*, 45 F.3d 1177, 1188 (8th Cir. 1995) ("The trial court need not issue a prior crimes limiting instruction sua sponte.").

IV.

For two of the charges, Bamberg offered a jury instruction stating that, in order to convict, the jury must find that he knew at the time he possessed and distributed 1,4 BD that it was an analogue of GHB. The court instead gave its own instructions. Bamberg objected.

On the charge of possession with intent to distribute, the jury was required to find: (1) 1,4 BD is a controlled substance analogue, (2) Bamberg possessed it; (3) he knew that he was or intended to be in possession of 1,4 BD; and (4) he intended to distribute some or all of it to another person for human consumption. On the charge of distribution of a controlled substance analogue to a person under 21, the jury was required to find: (1) 1,4 BD is a controlled substance analogue; (2) Bamberg knowingly and intentionally transferred it to Cassutt; (3) he knew it was 1,4 BD; (4)

he was at least 18; (5) Cassutt was under 21; and (6) Bamberg knew it was for human consumption.

Bamberg relies principally on *United States v. Turcotte*, 405 F.3d 515 (7th Cir. 2005), to support his scienter challenge to the jury instructions. The *Turcotte* court acknowledges that for "traditional" controlled substances like cocaine, heroin, or crack, "knowledge of the drug's identity would be sufficient to establish knowledge of the drug's status as controlled." *Id.* at 526 n.2. But for "nontraditional" drugs such as those covered by the Analogue Act, the *Turcotte* opinion notes that a defendant charged with possession and distribution of an analogue "must know that the substance at issue meets the definition of a controlled substance analogue set forth in [21 U.S.C.] § 802(32)(A)." *Id.* at 527.

The *Turcotte* court holds, however, that the instruction error was harmless: Turcotte knew that he was selling GBL, and Congress and regulatory authorities have put "any drug merchant" on notice that GBL (and 1,4 BD) are controlled substance analogues of GHB. *Id.* at 529. The *Turcotte* court concludes that for GBL and 1,4 BD, as with a traditional controlled substance like GHB, "knowledge of the substance's specific identity implies knowledge of the substance's legal status. Ignorance of the relevant legal provision is no defense." *Id.*

Similarly, any error in the scienter instructions in this case is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). One of the e-mails from Bamberg's hard drive mentions the manufacture of GHB, and other e-mails and the pay/owe sheets refer to the sale of "G," which a government witness identified as a "common street reference" to GHB. Most importantly, Bamberg told Cassutt that the substance was GHB, not 1,4 BD. Any scienter error in this case was harmless.

V.

Jarvis Cassutt testified at the trial that Bamberg gave him a dose, and later a small bottle, of GHB (actually 1,4 BD). Bamberg requested a jury instruction: "Whether or not a witness's testimony may have been influenced by his desire to please the government or to strike a good bargain with the government about his own situation is for you to determine." The court instead instructed the jury to consider, among other things, "any motives that witness may have for testifying a certain way." The court followed this court's Model Criminal Jury Instruction 3.04, "Credibility of Witness."

Because Bamberg did not object at trial, review is for plain error. *Smith*, 450 F.3d at 859. Although Cassutt was never charged with a crime, Bamberg describes him as an "informer/cooperating witness." The district court cautioned the jury to consider every witness's motives, and the court has broad discretion in instructing the jury. *United States v. Katz*, 445 F.3d 1023, 1030 (8th Cir. 2006). The instruction given fairly and adequately submitted Cassutt's credibility to the jury; the district court did not commit plain error.

VI.

A government expert, Dr. James V. DeFrancesco, testified that 1,4 BD is substantially similar to GHB, per 21 U.S.C. § 802(32)(A)(i). On cross-examination, he acknowledged a chemical difference between 1,4 BD and GHB, but maintained that they are substantially similar. On re-direct, Dr. DeFrancesco said that they "are about as similar as they can be." After re-direct, the district court asked:

The Court: And a substance in order to be an analogue must be substantially similar, correct?

Dr. DeFrancesco: In both the chemical structure and the pharmacology.

-9-

The Court:  In fact, if it were not substantially similar, but were, was exactly the same, it wouldn't be an analogue, would it?

Dr. DeFrancesco:  There would be no argument, it would be the same thing.

The Court:  That's right, it would be the same thing.  So if one point two (sic) Butanediol was the same as GHB, it would be GHB?

Dr. DeFrancesco:  That's correct.

The next day, Bamberg moved for a mistrial.

Bamberg contends that the court's questions are additional testimony and unfairly enhanced Dr. DeFrancesco's credibility.  This court will "balance and weigh the comments of the judge against the overall fairness of the trial," and will overturn a conviction only when "the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case." *United States v. Scott*, 26 F.3d 1458, 1464 (8th Cir. 1994).  A judge may question a witness in order to clarify testimony and to elicit necessary facts. *Id.*  But a trial judge should not act as an advocate and ask questions merely to emphasize the government's proof. *United States v. Van Dyke*, 14 F.3d 415, 420 (8th Cir. 1994).

The purpose of the court's questions was to clarify that 1,4 BD is *not* identical to GHB.  Whether they are identical was not part of the government's proof.  The government argued that 1,4 BD is "substantially similar" to GHB and therefore a controlled substance analogue.  Bamberg's expert testified that they are not "substantially similar," because the differences are too great. The court's questions did not advance the government's case, and were not prejudicial to Bamberg.

-10-

## VII.

The judgment of the district court is affirmed.

_____